IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RICKY SALAZAR,

    Plaintiff,

v.

                                                  Civil Action No. 3:14cv23
                                                 (Judge Groh)

ERIC HOLDER, Attorney General;
CHARLES E. SAMUELS, JR., BOP
Director; FEDERAL BUREAU OF
PRISONS; TERRY O'BRIEN, Warden,
USP Hazelton; C. SMITH, Senior
Correctional Officer, USP Hazelton;
B. KUNKLE, Correctional Officer,
USP Hazelton; N. VAIL, Senior Officer,
USP Hazelton; C. HELMS, Senior Officer,
USP Hazelton; R. BONE, Senior Officer
Specialist, USP Hazelton; LT. M. SPOLAN,
USP Hazelton; and MEDICAL STAFF,
USP Hazelton,

    Defendants.

## REPORT AND RECOMMENDATION

The *pro se* plaintiff, an inmate currently incarcerated at FCI Gilmer in Glenwood, West Virginia, initiated this Bivens[1] action by filing a civil rights complaint on February 21, 2014, along with a motion to proceed *in forma pauperis* ("IFP") and supporting documents. The Clerk of Court issued a Notice of Deficient Pleading. On March 5, 2014, plaintiff corrected his deficiencies. By Order entered March 10, 2014, plaintiff was granted leave to proceed IFP and directed to pay an initial partial filing fee. On April 7, 2014, the plaintiff paid the requisite fee.

Thereafter, on April 29, 2014, the undersigned conducted a preliminary review of the complaint and entered an Order directing the Clerk to issue a sixty (60)-day summons to each individual Defendant and to have the United States Marshal Service effect service on each

---

[1] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

individual Defendant. (Dkt.# 12.) In that Order, the plaintiff was given an additional thirty days, or until May 29, 2014, in which to identify the John and/or Jane Doe defendants. On June 25, 2014, the defendants moved for an extension of time and a consolidated response time in which to answer. (Dkt.# 18). By Order entered June 30, 2014, both motions were granted. (Dkt.# 19).

On August 29, 2014, the plaintiff filed a *pro se* Motion Seeking to Preclude U.S. Government from Representation of Defendant(s) in [Individual Capacity] (Dkt.# 23) and a *pro se* Motion Pursuant to Fed. Rules of Civ. Proc. Rule 16 "Pre-Trial Conference." (Dkt.# 24). By separate Orders entered September 8, 2014, each of those motions was denied. (Dkt.# 30 and 31).

Also on August 29, 2014, defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Dkt.# 25) with a Memorandum in Support (Dkt.# 26). Because the plaintiff was proceeding *pro se*, the undersigned issued a notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309, 310 (4th Cir. 1975), advising the plaintiff of his right to file a response to the defendants' dispositive motion. (Dkt.# 32). Plaintiff filed his response, titled Motion to Preclude Summary Judgment, with a *Pro Se* Brief in Support on September 8, 2014 (Dkt.# 33 and 34), along with a Motion Requesting Documents. (Dkt.# 35). On September 30, 2014, the plaintiff filed a *Pro Se* Sworn Affirmation to his Motion to Preclude Summary Judgment. (Dkt.# 36).

Accordingly, this case is now before the undersigned for review, report and recommendation pursuant to LR PL P 2.

## I. Contentions of the Parties

### A. The Complaint

In the complaint, the plaintiff raises excessive force claims and violations of his Eighth Amendment rights, U.S. Supreme Court and BOP policy against the defendant USP Hazelton staff members and other BOP personnel, arising out of an incident that occurred on June 3, 2011, while he was incarcerated at USP Hazelton. Plaintiff contends that Senior Officer C. Smith entered his cell and with "extreme force," threw him on the ground; punched him in the back; beat him; choked him by grabbing and squeezing his windpipe, gagging him and cutting off his airway; and shoving his fingers in plaintiff's mouth and down his throat. He further alleges that C.O. B. Kunkle kicked him and twisted his leg, and that other officers "watched them beat me." He contends that for three weeks afterwards, he could not swallow and had severe pain in his legs, back and throat. He contends that his knees and throat were left purple and bruised from the assault.[2] Further, he contends he is still in constant pain on a "pain scale [of] 10." He alleges that the officers' acts violated "B.O.P. Program Statement 5521.05, pg.#3, Sec. 2(C) [sic]: ". . . Inspection for contraband or any other foreign item in a body cavity of an inmate by use of fingers . . . Such inspections may only be conducted by designeated [sic] health personnel.""[3]

As relief, plaintiff seeks unspecified injunctive relief and monetary damages for injuries he alleges he received to his vocal cords, throat, legs, back, and neck.

**B. The Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment**

The defendants contend that the plaintiff's complaint should be dismissed or summary judgment should be granted in their favor, because

    1) plaintiff has failed to state a claim upon which relief can be granted;

    2) plaintiff has failed to exhaust his administrative remedies; and

---

[2] Dkt.# 8 at 9.

[3] Dkt.# 1 at 3.

3) the defendants are entitled to qualified immunity for their reasonable actions in conducting an immediate use of force during a search of plaintiff's cell, to prevent him from ingesting and destroying a bag containing seventeen packets of a substance later proven to be heroin.

C. **Plaintiff's Response (Motion to Preclude Summary Judgment)**

In his responses, the plaintiff reiterates his claims and attempts to refute the defendants' arguments on the same, contending that:

1) the Incident Report charging him with drug possession was false and retaliatory, and was later dismissed;[4]

2) despite the fact that his administrative remedy process was "at times hindered & also COVERED UP by BOP Staff [sic]" while he was in the SHU, and "at Times [sic] ADMIN [sic] REMEDY WITH-HELD . . . impeding the process[,]"[5] he has fully exhausted his administrative remedies;[6]

3) the sworn affidavit of BOP Administrative Remedy Clerk, Howard Williams has been "[altered by BOP THRU COINTEL PRO][7] to impede Justice [sic];"[8] further, Howard Williams should be added to this action because he participated in the defendants' cover-up by knowingly and wrongfully denied plaintiff's BP-10 Regional Appeal;[9]

3) the United States Attorney is precluded from representing Department of Justice employees in their individual capacities, because it violates BOP Policy §3420.09, Employee Code of Conduct;[10]

---

[4] Dkt.# 36, ¶1 at 1.

[5] Dkt.# 36, ¶7 at 3.

[6] Dkt.# 34, ¶1 at 7.

[7] COINTELPRO (**CO**unter **INTEL**ligence **PRO**gram) was a series of covert, at times illegal projects conducted by the FBI, begun in 1956 to disrupt the United States' Communist Party, expanded in the 1960s to include other domestic political groups such as the Ku Klux Klan, the Socialist Workers' Party, and the Black Panther Party. All COINTELPRO operations were ended in 1971. Although limited in scope (about 2/10 of 1% of the FBI's workload over a 15-year period), COINTELPRO was later rightfully criticized by Congress and the American people for abridging first amendment rights and other reasons. See http://vault.fbi.gov/cointel-pro

[8] Dkt.# 34 at 6, Dkt.# 36, ¶8 at 3.

[9] Dkt.# 34 at 5 and Dkt.# 36 at 2.

[10] Dkt.# 33 at 2 and Dkt.# 34, ¶1 at 3.

4) the sworn affidavits produced by the Assistant U.S. Attorney ("AUSA") with the defendants' Motion to Dismiss constitute perjury, because they contain "known falsehoods and account" of what transpired;[11]

5) the USP Hazelton medical staff, at the direction of Warden Obrien and Eric Holder, chose to downplay and "cover up" the extent of plaintiff's physical injuries; falsified his medical records,[12] and denied him proper medical care;[13] and

6) defendants Holder and Samuels condoned their subordinates' actions in covering up the wrongful acts that were committed.[14]

## I. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would

---

[11] Dkt.# 36 at 3.

[12] Dkt.# 33 at 3, Dkt.# 34 at 8, Dkt.# 36, ¶5 at 2, and ¶6 at 3.

[13] Dkt.# 34 at 8.

[14] Dkt.# 34 at 8.

5

entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable," id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court, which has held that a "claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

A grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). In applying the standard for summary judgment, a court must review all evidence "in the light most

favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . .must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citation omitted).

### III. Analysis

**A. Exhaustion of Administrative Remedies**

A Bivens action, like an action under 42 U.S.C. § 1983, is subject to exhaustion of administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). Porter v. Nussle, 534 U.S. 516, 524 (2002). Under the PLRA, a prisoner bringing an action with respect to prison conditions under Bivens, § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). Exhaustion as provided in § 1997e(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[15] and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to filing suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 93-94 (2006), the Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, the PLRA exhaustion requirement requires *full* and *proper* exhaustion. Id. at 92. Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 103.

The Bureau of Prisons ("BOP") provides a four-step administrative remedy process beginning with attempted resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9) within twenty (20) calendar days of the date of the occurrence on which the complaint is based. If an inmate is

---
[15] Porter, 534 U.S. at 524.

8

not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within twenty (20) calendar days of the warden's response. Finally, if the prisoner has not received any satisfaction, he may appeal to the Office of the General Counsel (BP-11) within thirty (30) calendar days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F. Supp. 941, 943 (D. Md. 1997).

Within the BOP record-keeping system, each administrative remedy request is assigned a six-digit numerical ID or case number, as well as an alpha-numeric suffix, which identifies the specific level in the administrative review process. Thus, the suffix "F" identifies a remedy request at the institutional (the facility) level; the letter "R" represents the Regional Office level; and the letter "A" indicates the General Counsel, or the Central Office level. For each specific remedy request, the numerical ID, or case number, remains the same, while the alpha-numeric suffix may change, depending upon the progression of the request through the various levels of administrative review. Furthermore, at each level, the letter is followed by a number, for example, "F1," which indicates the inmate has filed once at the institutional level. If the inmate is rejected at that level and re-files the appeal at that level, the suffix would be "F2."

Despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements," Booth, 532 U.S. at 741, n.6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Ziemba v. Wezner, 366 F.3d 161, 163 (2nd Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (summary dismissal

for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request). Indeed, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Furthermore, a number of courts of appeals have held that prison officials' threats of violence can render administrative remedies unavailable. See, e.g., Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 688 (2nd Cir. 2004). But see Larkin v. Galloway, 266 F.3d 718, 723-24 (7th Cir. 2001) (failure to exhaust not excused because plaintiff was afraid of retaliation). For threats or intimidation to render administrative remedies unavailable, they must typically be substantial and serious enough that they would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies. See Turner, 541 F.3d at 1085; Kaba, 458 F.3d at 684-86; Hemphill, 380 F.3d at 688.

Here, plaintiff simultaneously and contradictorily asserts both that he fully exhausted his administrative grievances, and implies that his lengthy stay in administrative detention in the Special Housing Unit ("SHU") after the incident somehow "impeded" or "withheld" the filing of his administrative grievances.

The defendants have produced copies of the plaintiff's Administrative Remedy records from the BOP's computerized SENTRY database; the records reveal that during plaintiff's BOP

incarceration, he filed a total of 27 administrative remedies.[16] Attached to his original complaint, the plaintiff also attached copies of some of the grievances he filed.[17] While the plaintiff did file a number of remedy requests that were arguably related to the June 3, 2011 incident, he only completed the PLRA's mandatory review process with one of them, **Remedy # 721993,** a remedy alleging only that Officer Smith was not permitted or "qualified" by BOP policy to perform the "intrusive" search that recovered the contraband drugs that plaintiff was attempting to conceal in his mouth.[18]

Plaintiff did not file any grievance over the June 3, 2011 use of force incident at all until June 23, 2012, one year and nearly three weeks later. On that day, he filed Remedy ID **#697284-F1** at the institution level, complaining only that the June 3, 2011 search "implemented" against him violated the BOP's Program Statement §5521.05, which directs that in "body searches" of inmates, inspections for contraband in a body cavity "by the use of fingers or simple instrument" must be conducted by "qualified health personnel."[19] This remedy was rejected as untimely by the Administrative Remedies Coordinator at USP Hazelton on July 19, 2012, because its June 23, 2012 submission date was well outside of the twenty (20) calendar day deadline by which an

---

[16] Declaration of Howard Williams, Legal Assistant and Administrative Remedy Clerk, Mid-Atlantic Regional Office of the Federal Bureau of Prisons, Dkt.# 26-1, ¶6 at 2.

[17] Dkt.# 1-1 at 6 – 21.

[18] Technically, this claim should not be considered exhausted at all, because under the PLRA, full and proper exhaustion includes meeting *all time and procedural requirements* of the prison grievance system. Woodford v. Ngo, 548 U.S. at 103. Here, the plaintiff initiated **Remedy # 721993** on February 1, 2013, by the filing of a BP-10, instead of a BP-9. It was received by the Regional Office on February 7, 2013 and rejected the same day, because he had not first filed a BP-9 before appealing to that level. However, plaintiff re-filed it a second time with the Regional Office, where inexplicably, it was received on May 3, 2013, and not rejected until July 5, 2013 (the record is silent as to the circumstances of this). Plaintiff then appealed it to the Central Office, where it was reviewed and finally closed on November 14, 2013. See: Dkt.# 1-1 at 11 and 14; Dkt.# 26-4 at 3; Dkt.# 1-1 at 12; Dkt.# 26-4 at 5; Dkt.# 1-1 at 9, and Dkt.# 1-1 at 10. However, here, because the BOP's position is that plaintiff exhausted it, the undersigned will consider it exhausted.

[19] Dkt.# 1-1 at 18.

administrative remedy must be initiated.[20] On July 25, 2012, the plaintiff attempted to appeal the rejection to the Regional Office level by filing Remedy ID **#697284-R1**.[21] It was stamped "Received" on August 6, 2012,[22] and was also rejected by the Regional Office on September 28, 2012.[23] The plaintiff never attempted to appeal this claim to the Central Office.

Likewise, on February 12, 2013, the plaintiff filed Remedy ID **#723423-F1** at the institution level complaining of an "intrusive search" by unnecessary force in violation of BOP Program Statement §5521.05, again claiming that a search of an inmate's body cavity by use of fingers must be conducted by health personnel.[24] On February 20, 2013, this administrative remedy request was also rejected as untimely by the Warden, since the incident had occurred more than twenty days before the date of the administrative remedy request.[25] The plaintiff did not attempt to appeal it further, to the Regional Office or the Central Office.

Finally, although plaintiff's **Remedy ID# 721993-A1**, was submitted to and received by the Central Office level on July 30, 2013,[26] although he generally complained about excessive force, the gravamen of **Remedy ID# 721993** is that Officer Smith was not a qualified health representative under BOP Program Statement §5521.05. The plaintiff made no allegation that he had sustained any injury as a result of the body cavity search. Accordingly, there is no evidence in the record to show that the merits of any of the rest of plaintiff's claims of physical injuries

---

[20] Dkt.# 1-1 at 17; Dkt.# 26-4 at 2.

[21] Dkt.# 1-1 at 20; Dkt.# 26-4 at 3.

[22] Dkt.# 1-1 at 20.

[23] Dkt.# 26-4 at 3.

[24] Dkt.# 1-1 at 7; Dkt.# 26-4 at 4.

[25] Dkt. #1-1 at 6; Dkt.# 26-5.

[26] Dkt.# 26-1, ¶8 at 3; Dkt.# 26-4 at 6.

were ever exhausted, let alone addressed, at the administrative level. The only claim fully exhausted in **Remedy ID# 721993** is that BOP Policy Statement §5521.05 was violated.

Finally, a careful review of the record establishes that plaintiff's naked assertion that the defendants somehow impeded his access to the grievance process by keeping him in the SHU, in addition to being unsubstantiated, is not credible. The incident happened on June 3, 2011; to have timely filed his grievances, plaintiff would have had to file his first administrative remedy by June 23, 2011. The record reveals that the plaintiff was seen in Health Services after the incident on June 3, 2011 (where he denied any injury by shaking his head);[27] he was seen again in a health encounter in the SHU on June 4, 2011 for complaint of a headache and left arm pain.[28] He was placed in a "dry cell status" in the SHU[29] immediately after the June 3, 2011 medical exam and remained there for an undetermined number of days, but at least until June 6, 2011;[30] thereafter, at least by June 21, 2011, he was housed in the SHU in administrative detention,[31] where he remained until at least September 14, 2011.[32] During that time in the SHU, on July 25, 2011, he requested treatment for a toothache[33] and received treatment in the dental clinic the following day;[34] requested chronic care treatment for hepatitis on August 23, 2011 and

---

[27] Dkt.# 27-1 at 15.

[28] Dkt.# 27-1 at 13.

[29] Dkt.# 26, ¶ at 4; Dkt.# 26-7, ¶4 at 2; Dkt.# 26-9, ¶5 at 2; and Dkt.# 27-1 at 13.

[30] Dkt.# 27-1 at 49.

[31] Dkt.# 27-1 at 46.

[32] Dkt.# 27-1 at 42.

[33] Dkt.# 27-1 at 40 and Dkt.# 27-1 at 68.

[34] Dkt.# 27-1 at 36-41.

13

received a response the following day;[35] and had regular visits from "staff psych" on June 22, 2011,[36] July 21, 2011,[37] August 17, 2011,[38] and September 14, 2011.[39] It is apparent from the record that at no time were his complaints ignored; rather, it appears that he routinely received attention, even when not requested, and promptly received attention whenever he requested it.

Accordingly, plaintiff has provided nothing beyond the very general allegation in his Roseboro response that the defendants somehow "impeded" his access to the administrative remedy system. He gives no details as to how that might have happened; he does not allege that he ever requested a grievance and was ignored or was denied, or that he was ever threatened for attempting to file one. Although Fed. R. Civ. P. 8(c) provides that "all pleadings shall be so construed as to do substantial justice," the Fourth Circuit further holds that a "heightened pleading standard" is highly appropriate in actions against government officials. Randall v. United States, 95 F.3d 339 (4th Cir. 1996). See also Dunbar Corp. v. Lindsey, 905 F.2d 754, 764 (4th Cir. 1990). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. Weller v. Dept. of Social Services, 901 F.2d 387 (4th Cir. 1990). Moreover, the Supreme Court has held that in order to survive a Rule 12 Motion, a Complaint must offer more than "labels and conclusions," a "recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) citing Bell Atlantic Corp. v. Twombley, 550 U.S. 541 (2007). Facts, not conclusions, must be pled; the

---

[35] Dkt.# 27-1 at 64.

[36] Dkt.# 27-1 at 46-47.

[37] Dkt.# 27-1 at 45.

[38] Dkt.# 27-1 at 43.

[39] Dkt.# 27-1 at 42.

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Accordingly, plaintiff's claim that defendants interfered with his administrative remedies is unsubstantiated and not credible.

Finally, because plaintiff has filed no administrative remedy at all with regard to his complaints that Officer Smith, let alone any other officer, ever punched, beat, choked, or kicked him; twisted his leg; grabbed and/or squeezed his wind pipe; choked or gagged him or cut off his airway; shoved their fingers in his mouth and down his throat with such extreme force that they inflicted bodily harm; and/or that for three weeks after the incident he was rendered unable to swallow and his legs, back and throat were in severe pain,[40] those claims are not exhausted.

Further, the plaintiff never initiated any grievance regarding the laundry list of bare, conclusory allegations he raised for the first time in his Roseboro responses: that the defendants retaliated against him by falsely charging him drug possession; "impeded" his access to the grievance process; altered the sworn affidavit of BOP Administrative Remedy Clerk through COINTELPRO to "impede Justice;" the Administrative Remedy Clerk participated in the cover-up by knowingly and wrongfully denying plaintiff's BP-10 Regional Appeal; the defendants' sworn affidavits regarding their versions of the June 3, 2011 incident were false and perjured; USP Hazelton medical staff, at the direction of Warden Obrien and Eric Holder, via falsified records, downplayed and covered up the extent of the physical injuries plaintiff received and

---

[40] Moreover, the plaintiff's medical records, produced by the defendants, do not indicate that the plaintiff ever complained of any of these symptoms. To the contrary, the only findings in the medical exam performed on the day of the June 3, 2011 incident were an "approximate 1.5" superficial scratch to the left upper scalp, mild swelling and redness to the left forehead area, several superficial red marks to the upper back, and superficial abrasion [sic] bilaterally to the knees." See Dkt.# 27-1 at 1 - 2 and 15. The next day, while in the SHU dry cell, when plaintiff complained of a headache and left arm pain, he was seen by the RN, who provided ibuprofen and instructed him to follow up at sick call if his condition worsened or persisted. See Dkt.# 27-1. There is no indication within the medical records, which continue to at least September 27, 2011, that the plaintiff ever raised any other physical complaint arising out of any injury sustained in the June 3, 2011 use of force.

denied him proper medical care; and defendants Holder and Samuels condoned the actions of their subordinates in covering up the wrongful acts that were committed. It is apparent that in addition to being insufficiently-pled, that plaintiff failed to even initiate the administrative remedy process regarding these particular claims. Therefore, these claims, along with all of the others raised in the complaint should be dismissed for the failure to exhaust administrative remedies. See Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). Because it is clear that the plaintiff failed to properly exhaust these Bivens claims, he cannot now do so under the BOP's administrative remedy procedures,[41] so his claims should be dismissed with prejudice. See 28 C.F.R. § 542.10, et seq.

Notwithstanding plaintiff's failure to exhaust his administrative remedies with his other claims mentioned *supra,* the undersigned will analyze plaintiff's remaining claim to determine whether plaintiff's complaint states a valid Eighth Amendment claim.

## B. Failure to State an Eighth Amendment Claim

### Violation of BOP Policy Statement §5521.05

Plaintiff's only fully exhausted claim, therefore, is that Officer Smith violated BOP Policy Statement §5521.05 when he conducted the June 3, 2011 "body cavity" search using his fingers, and removed the bag containing heroin from his mouth, because Officer Smith was not a "qualified health professional."

However, to the extent that the plaintiff is alleging that Officer Smith or any other Hazelton employee violated policy statements and operating procedures in conducting the

---

[41] The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9)**, within 20 calendar days of the date of the occurrence on which the complaint is based**. See 28 C.F.R. § 542.10, *et seq.* (emphasis added).

16

"search" of his mouth to remove the bag of heroin, he fails to state an Eighth Amendment claim. A Bivens action "must be founded upon a violation of constitutional rights," Arcoren v. Peters, 829 F.2d 671, 676 (8th Cir. 1987), and "a failure to adhere to administrative regulations does not equate to a constitutional violation." Hovater v. Robinson, 1 F.3d 1963, 1068 n. 4 (10th Cir. 1993). Accordingly, the plaintiff has failed to state a claim upon which relief can be granted on his only fully exhausted claim, and this claim, as well, should be dismissed.

### IV. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Dkt.# 25) be **GRANTED** and that plaintiff's complaint be **DENIED** and **DISMISSED with prejudice** from the docket.

Further, it is recommended that plaintiff's pending *pro se* Motion to Preclude Summary Judgment (Dkt.# 33) and Motion Requesting Documents (Dkt.# 35) be **DENIED as moot.**

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, **or by November 10, 2014**, the plaintiff may file with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of Court is directed to mail a copy of this Report and Recommendation to the

*pro se* plaintiff by certified mail, return receipt requested, to her last known address as shown on the docket, and to transmit a copy electronically to all counsel of record.

DATED: October 27, 2014

                                                /s/   James E. Seibert_____
                                                JAMES E. SEIBERT
                                                UNITED STATES MAGISTRATE JUDGE